**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                          No. 96-4713

MARTIN DALE FITZPATRICK,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Joseph Robert Goodwin, District Judge.
(CR-96-36, CR-96-63)

Submitted: September 30, 1997

Decided: October 17, 1997

Before ERVIN, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Gene W. Gardner, GARDNER & CYRUS, Huntington, West Vir-
ginia, for Appellant. Rebecca A. Betts, United States Attorney,
Michael O. Callaghan, Assistant United States Attorney, Charleston,
West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Martin Dale Fitzpatrick pled guilty to an information charging him in the Northern District of West Virginia with negligently causing the Pea Ridge Public Service District to violate its permit under the National Pollutant Discharge Elimination System by discharging raw sewage into a river between December 1994 and February 1995. See 33 U.S.C. § 2314 (1994), 18 U.S.C. § 2 (1994). He also pled guilty to a separate information charging him in the Southern District of West Virginia with interstate transportation of stolen property. See 18 U.S.C. § 2314 (1994). Pursuant to Fed. R. Crim. P. 20, Fitzpatrick consented to disposition of both charges in the Southern District of West Virginia. He received a 36-month sentence. He appeals this sentence, contending that the district court erred in determining the combined offense level. See U.S. Sentencing Guidelines Manual, § 3D1.4 (1995). He also argues that the court clearly erred in finding that his conduct caused the disruption of a public utility, and erred in finding that an enhancement for discharge without a permit applied in his case. We affirm.

For a year and a half, Fitzpatrick and others stole high voltage electrical breakers and starters from various industrial sites and sold them. One of the sites was the Pea Ridge Public Service District. The loss of the breakers which controlled the pumps at a lift station rendered the station inoperable and caused twelve million gallons of raw sewage to be discharged into the Guyandotte River. In March 1995, Fitzpatrick was arrested after electrical devices stolen from an Ohio company were discovered in his car.

The probation officer recommended an adjusted offense level of 18 for the pollution offense. This included a 4-level enhancement for disruption of a public utility and a 4-level enhancement for discharge in violation of a permit. See USSG § 2Q1.3(b)(3)-(b)(4). The stolen property offense was placed in a separate group and had an adjusted offense level of 12, but carried a statutory maximum of 12 months imprisonment. The probation officer then applied USSG § 3D1.4. That guideline section sets out a procedure for calculating the combined offense level for multiple counts when there is more than one

2

group of counts. The offense level for the count or group of counts with the highest offense level becomes the combined offense level and may be further adjusted upward depending on the total number of offenses and their relative seriousness. The probation officer also recommended a 3-level adjustment for acceptance of responsibility, resulting in a final combined offense level of 16.

Fitzpatrick objected to this calculation on the ground that the pollution offense, a Class A misdemeanor, was considered the most serious offense because it had the highest offense level. He argued that the lower offense level for the stolen property offense should govern the calculation because, as a felony, the stolen property offense was the more serious offense. The district court correctly found that, in determining the combined offense level for multiple counts, the most serious offense is the offense with the highest offense level, regardless of its statutory designation. The district court also found the recommended enhancements under USSG § 2Q1.3 appropriate and declined to depart downward on the ground that Fitzpatrick acted negligently rather than knowingly, although the commentary encourages such a departure. See USSG § 2Q1.3, comment. (nn.3, 6-7).

With seven criminal history points, Fitzpatrick was in criminal history category IV. His guideline range was 33-41 months. The district court announced its intention to impose a sentence of 36 months imprisonment. Fitzpatrick then asserted that his sentence for both offenses would have been less severe had the offenses been prosecuted separately. He complained that he was effectively being penalized for consolidating the offenses in the interest of judicial economy. The government also expressed concerns about the effect of grouping the counts.

Citing guideline section 5G1.2 (Sentencing on Multiple Counts of Conviction), the court ultimately imposed a sentence of 27 months for the pollution offense and a sentence of 12 months for the stolen property offense. Nine months of the 12-month sentence were made consecutive to the 27-month sentence to produce a 36-month sentence.

On appeal, Fitzpatrick first contends that the district court failed to apply USSG § 5G1.1(a) (Sentencing on a Single Count of Conviction) in determining the combined offense level for his two offenses.

3

That guideline section provides that, when the guideline range is greater than the statutory maximum, the guideline sentence shall be the statutory maximum. From this language, he argues that the district court should have treated the 12-month statutory maximum for his stolen property offense as the "guideline sentence" and thus, the "most serious offense," in determining the combined offense level under USSG § 3D1.4. His argument confuses the functions of the two guidelines. Section 5G1.1 does not come into play until the guideline range has been determined; moreover, it does not apply at all when multiple counts are involved. Therefore, Fitzpatrick's argument is meritless.

Second, Fitzpatrick maintains that the district court clearly erred in finding that a public utility was disrupted, see USSG § 2Q1.3, because service to consumers was not affected. Fitzpatrick characterizes the effect of his conduct as an "interruption" rather than a "disruption" of the facility. The district court used the term "interruption" in its finding, but found that loss of the breakers had a significant effect on the sewer plant, which "did not work" without them. Disruption is more than simple interference or interruption. See United States v. Rutana, 18 F.3d 363, 365 (6th Cir. 1994). In this case, a sewage treatment lift station was disabled and millions of gallons of raw sewage were discharged into the river. Replacement of the stolen electrical equipment cost the Public Service District approximately $56,000. On these facts, we find that the district court did not clearly err in making the enhancement for disruption of a public utility.

Last, Fitzpatrick challenges the enhancement for an offense involving violation of a permit. He does not dispute that the Public Service District violated its permit to operate by discharging untreated sewage, but argues that the enhancement applies only to businesses and persons who operate plants subject to Clean Water Act regulations. We are not persuaded. As the district court found, the guideline applies to anyone convicted of a violation of the statute. We find that the enhancement was correctly made.

The sentence is therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED